UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Case No. 1:22-cr-20187-12

v.                                        Honorable Thomas L. Ludington
                                            United States District Judge

ARISTEO RUEDA ROBELIN,

                Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE AND TO HOLD A *FRANKS* HEARING**

As part of an investigation into a drug-distribution conspiracy, a federal agent authored an affidavit for a warrant to search Defendant Aristeo Rudeo Robelin's house in Saginaw, Michigan. Six months later, Robelin was indicted with 14 others on drug-conspiracy charges and is awaiting trial. He seeks to suppress all evidence seized from his house for lack of probable cause.

The questions presented are (1) whether there was probable cause in the search-warrant affidavit and (2) if so, whether Defendant is entitled to a *Franks* hearing.

**I.**

On March 22, 2022, federal law-enforcement officers sought a search warrant for the search of Aristeo Rudeo Robelin's house at 3954 Mannion Road in Saginaw, Michigan, for evidence related to drug trafficking. Special Agent Troy Wohlfert[1] of the FBI executed an affidavit supporting the warrant.[2] *See* ECF No. 323 at PageID.1009. In the Affidavit, Agent Wohlfert avers that Robelin—who won the lottery in 2005—was referred to as "Lotto Man" or "Lottery Man,"

---

[1] As stated in the Affidavit, Agent Wohlfert has been a special agent with the FBI since 2010 and assigned to a Mid-Michigan Safe Streets Task Force since 2016.

[2] Although this Court reviewed the Affidavit in considering Robelin's Motion, the Affidavit is not filed on the public docket, so it is not cited throughout this Opinion and Order.

and that known drug dealers had twice visited his house in the prior week. *Id.* at PageID. 1010.

Six months after the search warrant was executed, Robelin was indicted for conspiracy to distribute and to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846, and unlawful use of a communication facility, 21 U.S.C. § 843(b). ECF No. 176. Trial will begin on September 28, 2023. ECF No. 356.

On May 2, 2023, Robelin filed a Motion to Suppress Evidence and for a *Franks* hearing related to the search that occurred on March 22, 2022. ECF No. 323. He argues the Affidavit does not have sufficient probable to support the search warrant, *see* ECF No. 323 at PageID.1019–22, and contains four false statements that entitle him to a *Franks* hearing, *see id.* at PageID.1012–19. The Government, on the other hand, asserts that the Affidavit establishes probable cause and Robelin has not made either showing required for a *Franks* hearing. *See* ECF No. 341 at PageID.1078–85.

## II.

### A.

The Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant based on probable cause, subject to some exceptions. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). This "is not a high bar: It requires only the 'kind of fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338, (2014) (quoting *Florida v. Harris*, 568 U.S. 237 (2013)).

In order to establish probable cause, search-warrant affidavits must present "facts that

indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016); *see also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (requiring a "nexus between the place to be searched and the evidence sought.").

**B.**

The affidavit contains enough evidence to establish probable cause. Here, the affidavit relies on evidence from March 14, 2022, and March 21, 2022, summarized below:

March 14, 2022. As part of an ongoing investigation, the FBI intercepted a call during which codefendants Ricardo Delgado and Gregory Hayes discussed controlled substances and their quality. Hayes asked Delgado if one type was good quality, and Delgado responded, "I'm waiting for Lottery Man"—presumably to discuss such quality. According to the Affidavit, Agent Wohlfert believed "Lottery Man" was Robelin because Robelin won the lottery in 2005, which is a fair inference. Three hours later, Delgado arrived at Robelin's house. Agent Wohlfert averred that his training, experience, and listening to previously intercepted calls led him to believe that Delgado had previously provided Robelin with kilograms of controlled substances and traveled to Robelin's house then to find out the quality and to exchange any low-quality drugs.

If considered alone, then these events are, admittedly, thin grounds for probable cause. Delgado telling Hayes he was "waiting for Lotto Man" and then arriving at Robelin's house three hours later do not alone establish a "fair probability that evidence" of drug trafficking would be found there. *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016). But there is more.

March 21, 2022. One week later, the FBI intercepted multiple calls between Delgado and codefendant Austin Saucedo, an identified drug runner for Delgado. Within 30 minutes of these calls, Saucedo arrived at Robelin's house. Within the same hour, Delgado called Saucedo two

more times. Agent Wohlfert's training and experience led him to believe that in the prearrival calls Delgado was instructing Saucedo either to pick up money or drop off controlled substances at Robelin's house on Delgado's behalf, and that the two later calls were to ensure the exchange occurred as planned.

These events establish probable cause, especially when considered with the events from a week prior. The Affidavit describes a known drug runner calling a known drug dealer right before arriving at and leaving Robelin's house—leaving a reasonable officer to conclude that evidence of drug crimes would be found there. *See United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (noting that the "critical question" is whether the affidavit has a "sufficient nexus between the criminal activity observed and the" place to be searched); *see also United States v. Fitts*, No. 3:19-CR-00075, 2020 WL 4726404, at *3 (E.D. Tenn.), *R. & R. adopted*, No. 2020 WL 2839289 (E.D. Tenn. June 1, 2020) (holding that "circumstantial evidence" of codefendants texting near one of their houses established probable cause). True, the Affidavit does not present direct evidence of illegal drug activity. But probable cause does not require direct evidence. *See United States v. Glowacki*, No. 22-3279, 2023 WL 179887, at *5 (6th Cir. Jan. 13, 2023) (holding that the proper assessment regarding probable cause is not "whether particular conduct is innocent or guilty, but rather the degree of suspicion that attaches to particular types of noncriminal acts"), *cert. denied*, 143 S. Ct. 1042 (2023) (quotations omitted). That leaves Robelin's assertion that the Affidavit contains four misrepresentations.

### III.

### A.

"[T]he obvious assumption" made regarding the probable-cause requirement "is that there will be a truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quoting *United*

- 4 -

*States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). A statement in an affidavit is deemed truthful if it is "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

In order to obtain a *Franks* hearing, Defendant must (1) "make a substantial showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit"; and (2) "prove that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). If the defendant satisfies both requirements, then the falsity or omission is set aside for the court to reevaluate whether the remaining content in the affidavit is "sufficient . . . to support a finding of probable cause." *Franks*, 438 U.S. at 171–72. If it is not, then the defendant is entitled to a *Franks* hearing under the Fourth Amendment. *Id.* at 172.

**B.**

Robelin alleges the following four statements in the Affidavit—all made in the portion of the affidavit detailing the March 14, 2022, events—were knowingly false or recklessly disregarded the truth such that the evidence should be suppressed or, alternatively, he is entitled to a *Franks* hearing:

1. Robelin won the lottery in 2005 and is referred to as Lotto man during intercepted calls.
2. Delgado had provided Robelin with kilogram quantities of controlled substances.
3. Delgado was waiting for Robelin to test these controlled substances to make sure they were of good quality.
4. Delgado then travelled to the target residence to find out the quality of those controlled substances and exchange out any that were of low quality.

ECF No. 323 at PageID.1010. Although Robelin alleges all four statements are false, he focuses mostly on the claim that he is called "Lotto Man," noting that without this claim, there is "no foundation" for the other three statements and "no nexus between Robelin's home and any criminal

- 5 -

activity." *Id.* at PageID.1012.

But Robelin makes no showing—let alone a substantial one—that Agent Wohlfert made any statement with reckless disregard for the truth or knowledge of its falsity. Robelin merely asserts that Agent Wohlfert "failed to explain how the government has concluded that Robelin is 'lotto man' or 'lottery man' . . . without tying this moniker to Robelin in any way." ECF No. 323 at PageID.1016. But Robelin admits "that he won the lottery back in 2005," *see id.*, and Robelin's 2005 winning of the lottery is the very fact Agent Wohlfert articulates in his Affidavit to link the nickname to Robelin.[3]

And, apart from a conclusory statement, Robelin does not provide any evidence that Agent Wohlfert asserted Robelin was "Lotto Man" with knowledge of or reckless disregard for the nickname's falsity. *See id.* at PageID.1028 (arguing Wohlfert's statements were "either knowingly false statements, or they were statements made with a reckless disregard for the truth"). True, Robelin has provided affidavits from 15 people saying they have never known Robelin to be called "Lotto Man." *See* ECF No. 365. But without evidence that Agent Wohlfert *intended* the statements

---

[3] Aristeo Robelin and Keith Bryce "shared half of a $35 million Mega Millions jackpot" they won in November 2005. MICH. BUREAU OF STATE LOTTERY, MICHIGAN LOTTERY 2006 ANNUAL REPORT 6 (2006), https://www.michigan.gov/-/media/Project/Websites/msl/BSL-L-AR2006.pdf?rev=8bb72908ed8b43f7a969869ce3d6f89f [https://perma.cc/7YPX-LFF3]; *see* Amy L. Payne, *Ex-Con Held onto His Lotto Millions and Started New Life*, MLIVE (Dec. 10, 2008), https://www.mlive.com/bctimes/2008/12/excon_held_onto_his_lotto_mill.html [https://perma.cc/YD4V-JL7J] ("They've played the Mega Millions each Tuesday and Friday since winning the jackpot."); *see also* ECF No. 365 at PageID.1216, 1218, 1222, 1224, 1226, 1229 (averring that Aristeo Robelin has been called "Thayo"); *The Lottery Changed My Life: Country Millionaire* (TLC television broadcast Oct. 9, 2010) (featuring "Thayo Robelin" as a lottery winner who "moved from the hood to the woods"). "Courts may take 'judicial notice of an adjudicative fact' under Federal Rule of Evidence 201(b)(2)." Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 13 (2022). All the information in this footnote is verifiable in public records, so this Court is taking judicial notice of it. *Bormuth v. Cnty. of Jackson*, 870 F.3d 494, 501 (6th Cir. 2017); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

to be false or misleading, Robelin cannot satisfy the first requirement for a *Franks* hearing. *See United States v. Allen*, No. 21-4029, 2023 WL 34235, at *3 (6th Cir. Jan. 4, 2023) (affirming district court's denial of *Franks* hearing where defendant provided no evidence that affiant had intent to lie or knowledge that he was lying); *see also United States v. Harris*, No. 1:21-CR-00074-6, 2023 WL 3475406, at *4 (S.D. Ohio May 15, 2023) ("[M]erely proving a falsity or omission is not enough—the defendant must show the affiant *intended* it to be false or misleading." (citing *United States v. Merrell*, 350 F. App'x 556, 560 (6th Cir. 2009))).

Even without those four statements, the remainder of the Affidavit detailing the March 21, 2022, events—which Robelin does not allege is false—provides probable cause. *See* discussion *supra* Part II.B. Thus, Robelin does not meet the second *Franks* requirement either. *United States v. Caldwell*, 221 F.3d 1336 (unpublished table decision), 2000 WL 875694, at *3 (6th Cir. June 19, 2000) ("Even assuming [Defendant] can make the substantial preliminary showing necessary to trigger a *Franks* hearing, the court need not conduct an evidentiary hearing if the court finds that probable cause exists on the face of the affidavit with the contested information set to one side.").

In sum, though the evidence in the Affidavit is circumstantial, it establishes probable cause, so Robelin's Motion will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant Aristeo Robelin's Motion to Suppress Physical Evidence and for a *Franks* Hearing, ECF No. 323, is **DENIED**.

**This is not a final order and does not close the above-captioned case**.

Dated: June 28, 2023

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge